

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

May 13, 2022

<u>Via ECF</u>
The Honorable District Judge Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: **<u>Pereira v. Dawn to Dusk Landscaping, Inc., et al.</u>**
   **21-CV-7006 (GRB)(JMW)**

Dear Judge Brown:

Our office represents Juan Pereira (collectively, "Plaintiff") and we submit this motion jointly with counsel for Dawn to Dusk Landscaping, Inc., Thomas Ambrogi and Albert Ambrogi (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation on April 11, 2022 and continued negotiations between the parties thereafter.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.    <u>The Monetary Terms of the Settlement Agreement are Fair and Reasonable</u>**

   a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees, which are addressed below, for the global amount of $30,000.00.

   b. **Plaintiff's Position**

Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that,

as a former landscaper of Defendants, that he was not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week.

Plaintiff alleged that he was employed by Defendants from in or around May 2018 until in or around September 2021. Plaintiff further alleged that he was regularly required to work six (6) to seven (7) days per week and approximately 11.5 hours per day. Thus, Plaintiff claimed that he worked sixty-nine (69) to eighty-one-and-a-half (81.5) hours per week, depending on the number of days worked that week.

Although Plaintiff worked in excess of 40 hours per week, Plaintiff was compensated at a flat daily rate of $140.00 per day. As such, Plaintiff alleged that he was not properly compensated for approximately twenty-nine (29) to forty-one-a-half (41.5) hours of overtime per week.

Assuming that Plaintiff could establish that he worked at least sixty-nine (69) hours per week during his employment by Defendants, Plaintiff claimed that he was owed approximately $37,000.00.

Additionally, Plaintiff claimed that he was entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

Although Plaintiff was confident that he would prevail at trial, Plaintiff's preference was for a guaranteed outcome and payment via Court-approved settlement. Plaintiff considered the defenses and records maintained by Defendants, Defendants' financial abilities and the risks and expenses of protracted discovery and litigation. Plaintiff also acknowledged the dispute over the dates of his employment for the appearing Defendants and how that dispute could potentially affect his alleged unpaid wages claim.

### c. Defendants' Position

#### i. Plaintiff Did Not Work The Time Period Alleged

It is Defendants' position that Plaintiff commenced employment during the week eneding April 25, 2020. Instead, Plaintiff worked for Defendant Castro prior to that date. In early 2020, Castro became a partner of Defendants' business, hiring many of his former employees (from his landscaping business that he owned and operated prior to 2020). Castro eventually abandoned the partnership and his employment with Defendants shortly thereafter, at which time Albert went back to operating the Company on his own. In furtherance of their position, Defendants maintained daily attendance/job logs and text messages (primarily with Defendant Castro concerning the time period he became a partner) and employee testimony.

Furthermore, Plaintiff's best-case damages computation did not take into account any days/weeks that he did not work due to weather, holidays, slow seasons when there were not as much work and vacations. In fact, the Company was a seasonal landscaping business and was closed from December through March/April each year (depending on the weather). Similarly, at the end of 2020, Plaintiff did not work overtime during the week of Thanksgiving and was off for 2 weeks around Christmas and New Year's (because Thomas Ambrogi was infected with Covid-19). Plaintiff also traveled to El Salvador for a total of nearly 8 weeks (i.e. from September 13 through October 26, 2020 and from April 13, 2021 through April 27, 2021).

Thus, at best, Plaintiff worked a total of 66 weeks for Defendants.

### ii. Plaintiff Did Not Work The Hours Alleged

Defendants operated approximately 5 or 6 days per week, depending on weather and business needs. In general, the business operated during weekdays and only performed services on a Saturday if they could not work during the week due to weather. During his employment, Plaintiff did work 6 days on several occasions, but worked 5 days more often. On a few occasions, he worked less than 5 days. During the time that Plaintiff performed painting work, he routinely worked 6 days per week, but sometimes less. He did not work seven (7) days in any week.

On a daily basis, Plaintiff worked a schedule from 8 a.m. to 5 p.m., less an hour lunch break (i.e. 8 hours per day). Notably, the Company's business is based out of Albert's home, so he did not want the trucks in his yard prior to 8 a.m. Moreover, employees, including Plaintiff, routinely arrived back at the yard and ended their work day between 4:30 p.m. and 5 p.m. Plaintiff worked a nearly identical daily schedule when performing painting work. In sum, Plaintiff generally worked a regular schedule of 40 to 48 hours per week.

Had the litigation proceeded further, Defendants were prepared to rely on employee testimony, daily attendance/job logs and the weather almanac for each year to support their defenses. In fact, the daily attendance/job logs establish that Plaintiff did not work the days and hours claimed. For example, they reflect the days per week worked and when, if ever, Plaintiff worked beyond 5 p.m.

It should also be noted that during the time period that he worked as a painter, Plaintiff was regularly given hours off at a time to handle personal issues. Furthermore, he was permitted to use company tools to perform work on his car during work hours. His pay was not reduced, although such time was not compensable.

### iii. The FLSA Claims Were Subject to Dismissal Since Plaintiff Could Not Establish Individual or Enterprise Coverage

Plaintiff's claims for unpaid wages pursuant to the FLSA are subject to dismissal. The FLSA's minimum-wage provisions only apply to employees who are "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce ('individual coverage'), or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce ('enterprise coverage')." Iqbal v. Multani, 2013 U.S. Dist. LEXIS 135003, 2013 WL 5329286, at *5 (E.D.N.Y. Sept. 20, 2013); see Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009) (stating that the two categories of FLSA coverage "are commonly referred to as 'individual' and 'enterprise' coverage").

Here, Plaintiff was not "engaged in commerce or in the production of goods for commerce" and instead only engaged in landscaping work on Long Island. See Siemieniewicz v. CAZ Contracting Corp., 2012 U.S. Dist. LEXIS 152379, 2012 WL 5183375, at *7 (E.D.N.Y. Sept. 21, 2012) (stating that the plaintiff's allegation that he "worked . . . as a carpenter" did "not suffice to establish [individual coverage] due to [the plaintiff] engag[ing] in commerce or in the production

of goods for commerce"); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (holding that "individual coverage" did not apply under the FLSA because the plaintiffs, who were employed to clean residential and commercial buildings, "did not alleged that they were personally "performing work involving or related to the movement of persons or things . . . between states").

Plaintiff also could establish enterprise coverage with respect to the Company because it did not have more than $500,000 in gross revenues or sales in any given year during the FLSA period (including all cash receipts).

Accordingly, Plaintiff's claims would have ultimately be dismissed, and he would have been required to re-file his NYLL claims in New York State Supreme Court, Suffolk County.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $30,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, and the pay received by Plaintiff, but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II.   The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement ("Release of Plaintiffs' Wage and Hour Claims") is appropriately-tailored to claims under the FLSA, NYLL and associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $30,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $19,532.00 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $702.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the cost of the Court-annexed mediation: $300.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($29,298.00), or $9,766.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $10,468.00.

**Settlement Amount:** $30,000.00
**Attorneys' Expenses:** $702.00
**Net Settlement Amount:** $29,298.00 ($30,000.00 - $702.00)
**Requested Attorneys' Fees:** $9,766.00 ($29,298.00 / 3)
**Total payable to Attorneys:** $10,468.00 ($9,766.00 + $702.00)
**Total payable to Plaintiffs:** $19,532.00 ($30,000.00 - $10,468.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207

(E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their client throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.     Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.